Kim E. Richman
*krichman@reeserichman.com*
George V. Granade II
*ggranade@reeserichman.com*
Michael R. Reese
*mreese@reeserichman.com*
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

Todd S. Garber
*tgarber@fbfglaw.com*
D. Greg Blankinship
*gblankinship@fbfglaw.com*
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
1311 Mamaroneck Avenue, Suite 220
White Plains, New York 10605
Telephone: (914) 298-3281
Facsimile: (914) 824-1561

*Counsel for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUCIANNE PAULINO and LATU FANAIKA, on behalf of themselves and all others similarly situated, | Case No. 1:14-cv-5145 |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| CONOPCO, INC., doing business as Unilever, | |
| Defendant. | |

1

Lucianne Paulino and Latu Fanaika (together, "Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following based upon their own personal knowledge and the investigation of their counsel.  Plaintiffs believe substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a proposed class action against Conopco, Inc., doing business as Unilever ("Conopco" or "Defendant"), for misleading consumers about the ingredients of its personal care products sold under the "Suave NATURALS" brand name, namely:

- Suave® NATURALS rainforest fresh™ SHAMPOO;
- Suave® NATURALS everlasting sunshine SHAMPOO;
- Suave® NATURALS tropical coconut SHAMPOO;
- Suave® NATURALS daily clarifying SHAMPOO;
- Suave® NATURALS refreshing waterfall mist SHAMPOO;
- Suave® NATURALS ocean breeze SHAMPOO;
- Suave® NATURALS sun-ripened strawberry SHAMPOO;
- Suave® NATURALS wild cherry blossom SHAMPOO;
- Suave® NATURALS juicy green apple SHAMPOO;
- Suave® NATURALS aloe & water lily SHAMPOO;
- Suave® NATURALS soothing lavender lilac SHAMPOO;
- Suave® NATURALS sweet pea violet SHAMPOO;
- Suave® NATURALS almond verbena 2IN1 SHAMPOO + CONDITIONER;
- Suave® NATURALS rainforest fresh™ CONDITIONER;
- Suave® NATURALS everlasting sunshine CONDITIONER;
- Suave® NATURALS tropical coconut CONDITIONER;
- Suave® NATURALS daily clarifying CONDITIONER;
- Suave® NATURALS waterfall mist CONDITIONER;
- Suave® NATURALS ocean breeze CONDITIONER;
- Suave® NATURALS sun-ripened strawberry CONDITIONER;
- Suave® NATURALS wild cherry blossom CONDITIONER;
- Suave® NATURALS juicy green apple CONDITIONER;
- Suave® NATURALS aloe & water lily CONDITIONER;
- Suave® NATURALS soothing lavender lilac CONDITIONER;
- Suave® NATURALS sweet pea violet CONDITIONER;
- Suave® NATURALS rainforest fresh BODY WASH;
- Suave® NATURALS everlasting sunshine BODY WASH;
- Suave® NATURALS Creamy milk & honey splash BODY WASH;
- Suave® NATURALS Creamy apricot & orange blossom BODY WASH;

- Suave® NATURALS Creamy cocoa butter & shea BODY WASH;
- Suave® NATURALS Creamy tropical coconut BODY WASH;
- Suave® NATURALS Creamy almond & verbena BODY WASH;
- Suave® NATURALS sweet pea & violet BODY WASH;
- Suave® NATURALS ocean breeze BODY WASH;
- Suave® NATURALS mango mandarin BODY WASH;
- Suave® NATURALS wild cherry blossom BODY WASH;
- Suave® NATURALS Everlasting Sunshine BODY LOTION;
- Suave® NATURALS Sweet Pea & Violet BODY LOTION;
- Suave® NATURALS Mango Mandarin BODY LOTION;
- Suave® NATURALS Lavender Vanilla BODY LOTION;
- Suave® NATURALS Wild Cherry Blossom BODY LOTION;
- Suave® KiDS Naturals Head to Toe Wash soothing Lavender.

and other similar varieties of "Suave NATURALS" brand products labeled with the representation "NATURALS," yet containing unnatural, synthetic ingredients ("Suave Naturals," the "Product," or the "Products").[1]  Exhibit 1 attached hereto and incorporated by reference herein shows the labeling and ingredients for many of the Suave Naturals Products at issue.

2.     Conopco engaged, and continues to engage, in a widespread, uniform marketing campaign using the Product packaging to mislead consumers about the nature, quality, and/or ingredients in Suave Naturals.   Specifically, Conopco prominently places the following representations and imagery on the Products' packaging, even though Conopco knows they are false and misleading:

a.     *"NATURALS"* – Defendant prominently represents that the Products are "NATURALS" on the front label of the Products, in the name, "Suave NATURALS."

b.     *"Infused with" Natural-Sounding Ingredients* – Defendant makes statements, such as "infused with mineral-rich algae extract," highlighting that the Products contain various natural-sounding ingredients.   For instance, Suave NATURALS Rainforest Fresh

---

[1] Defendant may discontinue offering some Products and regularly introduces new products that are also falsely labeled as "NATURALS."   Defendant may also offer other similar "Suave NATURALS" brand products for sale of which Plaintiffs are unaware.  Plaintiffs will ascertain the identities of these additional Products through discovery.

shampoo represents that it is "infused with aloe and bamboo extract," and Suave NATURALS Tropical Coconut shampoo represents that it is "infused with coconut extract." *E.g.*, Exhibit 1.

c.   ***Scenic Images of Nature*** – Accompanying the abovementioned text on the Product packaging are images of natural scenery or objects, such as blooming cherry blossoms, lush rainforest undergrowth, or a cracked coconut. *E.g.*, Exhibit 1.

d.   ***Natural-Sounding Product Names*** – Conopco named almost all of the Suave Natural Product varieties after natural environments or objects, including fruits. Examples include "Rainforest Fresh," "Everlasting Sunshine," "Tropical Coconut," "Waterfall Mist," and "Sun-Ripened Strawberry."

3.   Defendant's "NATURALS" statements, the statements that the Products are "infused with" natural-sounding ingredients, the images of natural scenery or objects, and the natural-sounding Product names deceive and mislead consumers into believing the Products have a natural quality.

4.   Unfortunately for consumers and their children, the Suave Naturals Products, which are sold in numerous nationwide supermarket and pharmacy chains, are not "NATURALS" or natural. Rather, the Products contain numerous unnatural, synthetic ingredients.

5.   For example, Suave® NATURALS rainforest fresh™ SHAMPOO contains synthetic, unnatural ingredients, including but not limited to the following:

a.   ***Sodium Laureth Sulfate*** – Sodium laureth sulfate is a heavily processed ingredient synthetically derived from ethoxylated lauryl alcohol and used as a surfactant.

b.   ***Cocamide MEA*** – Cocamide MEA is a compound synthesized from coconut oils and ethanolamine. Environmental Working Group, Skin Deep® Cosmetics Database, COCAMIDE MEA, http://www.ewg.org/skindeep/ingredient/701517/COCAMIDE_MEA/ (last visited Aug. 28, 2014).

c.   ***Ammonium Chloride*** – Commercial manufacture of ammonium

chloride is usually synthetic.[2]   Synthetic manufacture can occur by bubbling ammonia gas into water.  This will form ammonium hydroxide, which can be combined with hydrochloric acid to produce ammonium chloride.

    d.    ***Fragrance (Parfum)*** – The fragrances commonly used in body wash can have as many as 200 ingredients and are synthetic. Plaintiffs allege on information and belief that the "Fragrance" in the Products is synthetic.

    e.    ***Tetrasodium EDTA*** – This ingredient is produced synthetically for industrial purposes in the laboratory.  It is a preservative made from the known carcinogen formaldehyde and sodium cyanide.  It is also a penetration enhancer, meaning it breaks down the skin's protective barrier, going directly into the bloodstream.

    f.    ***DMDM Hydantoin*** – DMDM hydantoin is a synthetic antimicrobial preservative that is a "formaldehyde releaser" (*i.e.*, over time, it releases formaldehyde, a known carcinogen).

    g.    ***Methylchloroisothiazolinone*** – Methylchloroisothiazolinone is a preservative also known as "CMIT."   In combination with methylisothiazolinone, it goes by the trade name Kathon CG (among others).  It is synthetically produced.

    h.    ***Methylisothiazolinone*** – Also known as "MIT," this ingredient is a synthetic substance that can control or kill microorganisms.  It is used as a preservative.

    i.    ***PPG-9*** – This is another name for polypropylene glycol, which is the active component in antifreeze that is also used in automobile coolant.  In the normal manufacturing process, propylene—a by-product of gasoline manufacture—is converted to propylene oxide. This compound is then polymerized, using a strong base, such as potassium hydroxide, as a catalyst.

6.    For another example, Suave® NATURALS rainforest fresh BODY WASH contains synthetic, unnatural ingredients, including but not limited to the following:

    a.    ***Sodium Laureth Sulfate*** – *See* ¶ 5.a, *supra*.

    b.    ***Ammonium Chloride*** – *See* ¶ 5.c, *supra*.

---

[2] The natural, mineralogical form of ammonium chloride is called "sal ammoniac."

c.      ***Cocamide MEA*** *– See* ¶ 5.b, *supra*.

d.      ***Fragrance*** *– See* ¶ 5.d, *supra*.

e.      ***Glycerin*** – Usually, glycerin is manufactured for commercial use through hydrolysis of fats and oils during the manufacturing of soap products or synthesized from the hydrogenolysis of carbohydrates or from petrochemicals.   Chemicals used in glycerin synthesis include epichlorohydrin (hazardous), sodium hydroxide (synthetic and hazardous), allyl alcohol (synthetic and hazardous), hydrogen peroxide (synthetic), and peracetic acid (synthetic).   Plaintiffs believe and allege Defendant synthesizes the glycerin in the Products using common manufacturing methods.

f.      ***PPG-9*** *– See* ¶ 5.i, *supra*.

g.      ***Tetrasodium EDTA*** *– See* ¶ 5.e, *supra*.

h.      ***Methylchloroisothiazolinone*** *– See* ¶ 5.g, *supra*.

i.      ***Methylisothiazolinone*** *– See* ¶ 5.h, *supra*.

7.      Moreover, the unnatural, synthetic ingredients are not mere trace ingredients in the Products.

8.      To the contrary, the Products only contain a miniscule amount of even arguably natural ingredients (other than water).    After water, synthetic ingredients comprise the overwhelming majority of the Products' composition.

9.      For example, the most prevalent ingredients in Suave® NATURALS rainforest fresh™ SHAMPOO are water (aqua), sodium laureth sulfate (synthetic), cocamide MEA (synthetic), and ammonium chloride (synthetic).[3]   The next-most prevalent ingredient is fragrance (parfum) (synthetic), which Plaintiffs believe constitutes only a small percentage of the Product's composition.   Moreover, of the sixteen (16) ingredients in Suave NATURALS Rainforest Fresh

---

[3] The United States Food and Drug Administration requires ingredients to be listed on cosmetic product labels in the order of predominance in the product.   21 C.F.R. § 701.3(a), (c).

shampoo, only four (4)—water, "Bambusa Arundinacea Stem Extract," "Aloe Barbadensis Leaf Extract," and perhaps citric acid—are even arguably natural, and "Bambusa Arundinacea Stem Extract," "Aloe Barbadensis Leaf Extract," and citric acid are among the least predominant ingredients in the Product.

10.     For another example, the most prevalent ingredients in Suave® NATURALS rainforest fresh BODY WASH are water, sodium laureth sulfate (synthetic), ammonium chloride (synthetic), and cocamide MEA (synthetic).   The next-most prevalent ingredient is fragrance (synthetic), which, on information and belief, constitutes only a small percentage of the Product's composition.  Moreover, of the seventeen (17) ingredients in Suave NATURALS Rainforest Fresh body wash, only four (4)—water, "Bambusa Arundinacea Stem Extract," and "Aloe Barbadensis Leaf Extract," and perhaps citric acid—are even arguably natural, and "Bambusa Arundinacea Stem Extract," "Aloe Barbadensis Leaf Extract," and citric acid are among the least predominant ingredients in the Product.

11.     The compositional structure of Suave® NATURALS rainforest fresh™ SHAMPOO and Suave® NATURALS rainforest fresh BODY WASH is typical of the Suave Naturals Products.

12.     "Unnatural" is a defining characteristic of synthetic ingredients.

13.     No reasonable consumer understands Products labeled "NATURALS" to include numerous unnatural, synthetic ingredients, particularly when the only ingredients that are even arguably natural are a vanishingly small part of the Products' composition.

14.     For example, no reasonable consumer understands Suave® NATURALS rainforest fresh™ SHAMPOO, which is prominently labeled "NATURALS," to include, out of sixteen (16) total ingredients, twelve (12) that are not, in fact, natural—particularly when the most prevalent

Product ingredients (sodium laureth sulfate, cocamide MEA, and ammonium chloride) are synthetic, with the three (3) non-water ingredients that are even arguably natural comprising only a tiny part of the Product's composition.

15.     For another example, no reasonable consumer understands Suave® NATURALS rainforest fresh BODY WASH, which is labeled "NATURALS," to include, out of seventeen (17) total ingredients, thirteen (13) that are not, in fact, natural—particularly when the most prevalent Product ingredients (sodium laureth sulfate, ammonium chloride, and cocamide MEA) are synthetic, with the three (3) non-water ingredients that are even arguably natural comprising only a tiny part of the Product's composition.

16.     Through its deceptive practice of marketing and selling the Products as "NATURALS" despite the presence of synthetic ingredients, Defendant was able to command a premium price for the Products by deceiving consumers about the nature, quality, and/or ingredients of Suave Naturals.

17.     Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products, including but not limited to store-brand and brand name shampoos, conditioners, body washes, and body lotions, thereby increasing its own sales and profits.

18.     Because Suave Naturals contain synthetic, unnatural ingredients, Defendant's claims on the Product labeling and in the Product marketing that the Products are "NATURALS" are false and misleading, and they deceive consumers into purchasing the Products.

19.     Further, because Suave Naturals contain synthetic, unnatural ingredients, Defendant's claims that the Products are "infused with" various natural-sounding ingredients, as well as Defendant's use of images of natural scenery or objects and natural-sounding Product

names, on the Product labeling and in the Product marketing are misleading, and they deceive consumers into purchasing the Products.

20.     Were it not for Defendant's unfair and deceptive practices, Plaintiffs and the proposed class members would not have purchased Defendant's Suave Naturals Products. Plaintiffs bring this action to stop Defendant's misleading practice.

## JURISDICTION AND VENUE

21.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff Lucianne Paulino's claims arise out of Defendant's conduct within the State of New York.

22.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), under 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.  Plaintiffs allege that there are at least 100 members in the proposed plaintiff class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2).  A substantial part of the events or omissions giving rise to Plaintiff Lucianne Paulino's claims, including Defendant's dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

**Plaintiff Lucianne Paulino**

24.     Plaintiff Lucianne Paulino is a consumer residing in Brooklyn, New York, which is in Kings County.

25.     During the past six (6) years, Ms. Paulino purchased several varieties of the Products at retail prices from various Brooklyn supermarkets for the personal use of herself and her family, including but not limited to:

- Suave® NATURALS tropical coconut SHAMPOO;
- Suave® NATURALS tropical coconut CONDITIONER;
- Suave® NATURALS Creamy tropical coconut BODY WASH;
- Suave® NATURALS soothing lavender lilac SHAMPOO;
- Suave® NATURALS soothing lavender lilac CONDITIONER;
- Suave® NATURALS Lavender Vanilla BODY LOTION; and
- Suave® KiDS Naturals Head to Toe Wash soothing Lavender.

26.     The packaging of the Products Ms. Paulino purchased contained the representation that they were "NATURALS," representations that the products were "infused with" various natural-sounding ingredients, and imagery of natural scenes and objects, and the Products she purchased had natural-sounding names.

27.     In deciding to purchase, and in purchasing, the Products, Ms. Paulino relied upon the representation that Suave Naturals were, in fact, "NATURALS."  Additionally, in deciding to purchase, and in purchasing, the Products, she relied upon the misleading statements that the Products were "infused with" various natural-sounding ingredients, the misleading imagery of natural scenes and objects, and the misleading natural-sounding Product names on the front of the packaging, all of which convey qualities of naturalness to a reasonable consumer.

28.     Had Ms. Paulino known at the time of purchase that the Products were not, in fact, "NATURALS" or natural, but instead contained predominantly unnatural, synthetic ingredients,

she would not have purchased the Products.  Ms. Paulino purchased, purchased more of, or paid more for, the Products than she would have had she known the truth that the Products were not "NATURALS" or natural.

29.     Ms. Paulino paid for Products that were "NATURALS," but she received Products that were not "NATURALS" or natural.  Specifically, she received Products that contained predominantly synthetic ingredients, with only a vanishingly small fraction of even arguably natural ingredients, as discussed in detail herein.

30.     The Products Ms. Paulino received were worth less than the Products for which she paid.  Ms. Paulino was injured in fact and lost money as a result of Defendant's improper conduct.

31.     If Ms. Paulino knew the Product labels were truthful and non-misleading, she would continue to purchase the Products in the future (*i.e.*, she plans and intends on purchasing properly labeled Products in the future, in the event that Defendant changes the labeling to be truthful and non-misleading).  At present, however, Ms. Paulino cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Plaintiff Latu Fanaika**

32.     Plaintiff Latu Fanaika is a consumer residing in Oakland, California.

33.     During the past four (4) years, Ms. Fanaika purchased several varieties of the Products at retail prices from various Oakland supermarkets for her personal use, including but not limited to:

- Suave® NATURALS rainforest fresh™ SHAMPOO;
- Suave® NATURALS tropical coconut SHAMPOO;
- Suave® NATURALS tropical coconut CONDITIONER;
- Suave® NATURALS wild cherry blossom CONDITIONER;
- Suave® NATURALS rainforest fresh BODY WASH; and
- Suave® NATURALS Creamy tropical coconut BODY WASH.

34.     The packaging of the Products Ms. Fanaika purchased contained the representation

that they were "NATURALS," representations that the products were "infused with" various natural-sounding ingredients, and imagery of natural scenes and objects, and the Products she purchased had natural-sounding names.

35.    In deciding to purchase, and in purchasing, the Products, Ms. Fanaika relied upon the representation that Suave Naturals were, in fact, "NATURALS." Additionally, in deciding to purchase, and in purchasing, the Products, she relied upon the misleading statements that the Products were "infused with" various natural-sounding ingredients, the misleading imagery of natural scenes and objects, and the misleading natural-sounding Product names on the front of the packaging, all of which convey qualities of naturalness to a reasonable consumer.

36.    Had Ms. Fanaika known at the time of purchase that the Products were not, in fact, "NATURALS" or natural, but instead contained unnatural, synthetic ingredients, she would not have purchased the Products. Ms. Fanaika purchased, purchased more of, or paid more for, the Products than she would have had she known the truth that the Products were not "NATURALS" or natural.

37.    Ms. Fanaika paid for Products that were "NATURALS," but she received Products that were not "NATURALS" or natural. Specifically, she received Products that contained predominantly synthetic ingredients, with only a vanishingly small fraction of even arguably natural ingredients, as discussed in detail herein.

38.    The Products Ms. Fanaika received were worth less than the Products for which she paid. Ms. Fanaika was injured in fact and lost money as a result of Defendant's improper conduct.

39.    If Ms. Fanaika knew the Product labels were truthful and non-misleading, she would continue to purchase the Products in the future (*i.e.*, she plans and intends on purchasing properly labeled Products in the future, in the event that Defendant changes the labeling to be

truthful and non-misleading).  At present, however, Ms. Fanaika cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant Conopco, Inc.**

40.     Defendant Conopco, Inc. is a corporation organized under the laws of the State of New York.

41.     Conopco's principal executive office is located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## SUBSTANTIVE ALLEGATIONS

42.     Defendant sells several types of personal care products, including shampoo, conditioner, body wash, and body lotion, under the "Suave NATURALS" brand that are widely used by both children and adults.

43.     As discussed above, on the Product labels, Defendant prominently markets the Products as "NATURALS," states they are "infused with" various natural-sounding ingredients, and features picturesque natural scenery and objects on the Product labeling.

44.     Additionally, Defendant named almost all of the Suave Naturals Product varieties after natural environments or objects such as fruits, including but not limited to "Rainforest Fresh," "Everlasting Sunshine," "Tropical Coconut," "Waterfall Mist," "Ocean Breeze," "Sun-Ripened Strawberry," "Wild Cherry Blossom," "Juicy Green Apple," "Aloe & Water Lily," "Soothing Lavender Lilac," "Sweet Pea Violet," "Creamy Milk & Honey Splash," "Creamy Apricot & Orange Blossom," "Creamy Cocoa Butter & Shea," "Mango Mandarin," and "Lavender Vanilla." *E.g.*, Exhibit 1.

45.     Thus, Defendant's Products use a variety of names that mislead consumers to believe the Products consist of numerous natural ingredients and/or obscure the overwhelming

quantity of unnatural, synthetic ingredients that actually comprise the Products.

46.     Consumers, including Plaintiff and the other members of the "Class" (as defined below), frequently rely on label representations and information in making purchase decisions.

47.     Despite knowing that the synthetic ingredients are not natural and that its Products consist of numerous synthetic ingredients, Defendant has engaged in a widespread marketing and advertising campaign to portray the Products as "NATURALS" and to otherwise represent that the Products are natural, as discussed above.

48.     Defendant labels the Products as "NATURALS" and with the other representations/imagery discussed above to induce consumers to purchase its Products over competing ones.

49.     Defendant's representation that the Products are "NATURALS" is false and misleading because products containing synthetic ingredients are unnatural.  A reasonable consumer believes that Products labeled "NATURALS" do not contain unnatural, synthetic ingredients; in fact, however, the Products do contain such ingredients.

50.     Further, because Suave Naturals contain synthetic, unnatural ingredients, Defendant's claims that the Products are "infused with" various natural-sounding ingredients, as well as Defendant's use of images of natural scenery or objects and natural-sounding Product names, on the Product labeling and in the Product marketing are misleading.  Statements that the Products are "infused with" various natural-sounding ingredients, imagery of natural scenery or objects, and natural-sounding Product names on the Product labels suggest to a reasonable consumer that the Products do not contain unnatural, synthetic ingredients; in fact, however, the Products do contain such ingredients.

51.     Plaintiff and the other members of the Class reasonably relied to their detriment on

Defendant's false and misleading representations and omissions. Defendant's misleading affirmative statements that the Products are "NATURALS," as well as its other representations/imagery indicating the Products are natural, obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products, including in particular the fact that the Products contain synthetic ingredients.

52.    Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions described herein. Defendant's deceptive representations and omissions, as described herein, are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

53.    Plaintiffs and the Class members purchased the Products because they wanted natural personal care products.

54.    Defendant's deceptive representations and omissions injured Plaintiffs because they would not have purchased the Products, or would not have purchased the Products at a premium price, had they been truthfully advertised and labeled.

55.    The materiality of the representations and omissions described herein establishes causation between Defendant's conduct and the injuries that Plaintiffs and the Class members sustained.

56.    Defendant's false, misleading, and deceptive misrepresentations and omissions, as described herein, are likely to continue to deceive and mislead reasonable consumers and the general public. Indeed, they have already deceived and misled Plaintiffs and the other Class members.

57.    In making the false, misleading, and deceptive representations and omissions set

forth herein, Defendant knew and intended that consumers would pay for natural products in lieu of comparable products that are not full of synthetic ingredients, furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that Defendant's competitors truthfully offer as "natural" or "naturals."

58.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions (as detailed herein), Defendant injured Plaintiffs and the other Class members in that they:

    a.      paid a sum of money for Products that were not as represented;

    b.      were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

    c.      were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

    d.      did not receive Products that measured up to their expectations as created by Defendant;

    e.      were denied the benefit of truthful cosmetic labels; and

    f.      were denied the benefit of the beneficial properties of the natural cosmetics promised.

59.     Plaintiffs and the other Class members all paid money for the Products.  However, Plaintiffs and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions, as detailed herein.   Plaintiffs and the Class members purchased, and/or purchased more of, the Products than they would have had they known the truth about the Products' unnaturalness.  Accordingly, Plaintiffs and the Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules

of Civil Procedure on behalf of the following nationwide class (the "Nationwide Class"):

> All persons in the United States and its territories who purchased Defendant's Suave Naturals Products during the applicable limitations period (the "Class Period"). Excluded from the Nationwide Class are Defendant's officers and directors; members of the immediate families of Defendant's officers and directors; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

61.     Additionally, Plaintiff Lucianne Paulino brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following sub-class (the "New York Sub-Class"):

> All consumers who purchased Defendant's Suave Naturals Products in the State of New York during the Class Period. Excluded from the New York Sub-Class are Defendant's officers and directors; members of the immediate families of Defendant's officers and directors; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

62.     Additionally, Plaintiff Latu Fanaika brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following sub-class (the "California Sub-Class"):

> All consumers who purchased Defendant's Suave Naturals Products in the State of California during the Class Period. Excluded from the California Sub-Class are Defendant's officers and directors; members of the immediate families of Defendant's officers and directors; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

63.     Herein, Plaintiffs refer to the Nationwide Class, the New York Sub-Class, and the California Sub-Class, collectively, as the "Class" or the "Classes."

64.     Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

65.    At this time, Plaintiffs do not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores selling Defendant's Products, Plaintiffs believe the Class members are so numerous that joinder of all of them is impracticable.

66.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members include but are not limited to:

a.    Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiffs and the members of the Class using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature, quality, and/or ingredients of the Products;

b.    Whether Defendant omitted and/or misrepresented material facts in connection with the sales of the Products;

c.    Whether Defendant participated in and pursued the common course of conduct complained of herein;

d.    Whether Defendant has been unjustly enriched; and

e.    Whether Defendant's labeling, marketing, advertising, and/or selling of the Products as "NATURALS" and as natural constitutes an unfair or deceptive consumer sales practice.

67.    Plaintiffs' claims are typical of those of the Class members because Plaintiffs, like all members of the Class, purchased Defendant's Products bearing the "NATURALS" label and other representations of naturalness in a typical consumer setting and sustained damages from Defendant's wrongful conduct.

68.    Plaintiffs will fairly and adequately protect the interests of the Class members. Plaintiffs have retained counsel that are experienced in litigating complex class actions.  Neither Plaintiffs nor their counsel have any interests that are adverse to those of the Class.

69.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The damages that any individual Class member suffered are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum.  Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein.  There will be no difficulty in the management of this action as a class action.

70.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

71.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  Additionally, individual actions may be dispositive of the interests of all members of the Class, even though certain members of the Class are not parties to such actions.

72.     Defendant's conduct is generally applicable to the Class as a whole, and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole.  As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Breach of Express Warranty under New York Common Law)**
**(By Plaintiffs, on Behalf of Themselves and the Nationwide Class)**

73.     Plaintiffs repeat each and every allegation contained in the paragraphs above and

incorporate such allegations by reference herein.

74.     Plaintiffs bring this cause of action for breach of express warranty under New York common law on behalf of themselves and on behalf of the Nationwide Class.

75.     Conopco provided Plaintiffs and the members of the Nationwide Class with written express warranties including, but not limited to, warranties that the Products were "NATURALS" and were natural, as set forth above.

76.     Conopco breached these warranties by providing Products that contained unnatural, synthetic ingredients and that did not otherwise conform to its warranties, as detailed above.

77.     This breach resulted in damages to Plaintiffs and the members of the Nationwide Class, who bought Products but did not receive the goods as warranted, in that the Products were not "NATURALS" or natural because they contained synthetic, unnatural ingredients.

78.     As a proximate result of the breach of express warranties by Defendant, Plaintiffs and the other members of the Nationwide Class have suffered damages in an amount to be determined at trial, in that, among other things, they purchased and paid for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted, or Products that they would not have purchased and used had they known the true facts about them.

79.     THEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION
### (Violation of New York General Business Law Section 349)
### (By Plaintiff Lucianne Paulino, on Behalf of Herself and the New York Sub-Class)

80.     Plaintiff Lucianne Paulino repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

81.     Ms. Paulino brings this claim on behalf of herself and on behalf of the other members of the New York Sub-Class, pursuant to New York General Business Law section 349 ("GBL 349").

82.     GBL 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

83.     As fully alleged above, by advertising, marketing, distributing, and/or selling the Products with claims that they were "NATURALS" and otherwise natural to Ms. Paulino and the New York Sub-Class members, Defendant engaged in, and continues to engage in, deceptive acts and practices because the Products are in fact made from unnatural, synthetic ingredients.

84.     Ms. Paulino and the New York Sub-Class members believed Defendant's representations that the Products they purchased were "NATURALS" and natural.  Ms. Paulino and the New York Sub-Class members would not have purchased the Products at a premium price had they known the Products were not actually "NATURALS" or natural because they contained synthetic ingredients.

85.     Ms. Paulino and the New York Sub-Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "NATURALS" and natural.  Ms. Paulino and the New York Sub-Class members paid for "NATURALS" and natural Products, but did not receive such Products.

86.     The Products Ms. Paulino and the New York Sub-Class Class members received were worth less than the Products for which they paid.  Ms. Paulino and the New York Sub-Class members paid a premium price on account of Defendant's misrepresentations that the Products were "NATURALS" and natural.

87.     By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes

deceptive acts and practices in violation of GBL 349, and Defendant is liable to Ms. Paulino and the New York Sub-Class members for the actual damages that they have suffered as a result of Defendant's actions.  The amount of such damages is to be determined at trial, but will not be less than $50.00 per violation.  N.Y. Gen. Bus. Law § 349(h).

88.     Ms. Paulino and the New York Sub-Class members seek to enjoin such unlawful, deceptive acts and practices described above.  Each of the New York Sub-Class members will be irreparably harmed unless the Court enjoins Defendant's unlawful, deceptive actions in that Defendant will continue to falsely and misleadingly advertise the Products as "NATURALS" and as natural, as detailed herein.

89.     Ms. Paulino and the New York Sub-Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief prohibiting Defendant from continuing to disseminate its false and misleading statements, and other relief allowable under GBL 349.

90.     THEREFORE, Ms. Paulino prays for relief as set forth below.

### THIRD CAUSE OF ACTION
### (Fraud under New York Common Law)
### (By Plaintiffs, on Behalf of Themselves and the Nationwide Class)

91.     Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

92.     Plaintiffs bring this cause of action for fraud under New York common law on behalf of themselves and on behalf of the Nationwide Class.

93.     At all relevant times, Defendant has intentionally misrepresented material facts about the Products by advertising, marketing, distributing, and/or selling the Products to Plaintiffs and the Class members with claims that they are "NATURALS" and natural, as detailed herein.

94.     At the time Defendant made the misrepresentations herein alleged, Defendant knew the products were not "NATURALS" or natural because they contained synthetic ingredients.

95.     Defendant misrepresented the Products as "NATURALS" and natural with the purpose of inducing Plaintiffs and the Class members to rely on those misrepresentations and inducing Plaintiffs and the Class members to purchase the Products.

96.     Plaintiffs and the Class members reasonably relied on Defendant's representations that the Products were "NATURALS" and natural, as set forth herein, and, in reasonable reliance thereon, purchased the Products.

97.     Plaintiffs and the Class members were ignorant as to the falsity of Defendant's "NATURALS" and natural misrepresentations, as set forth herein, and would not have purchased the Products had they known the Products were not "NATURALS" or natural because they contained synthetic ingredients.

98.     Plaintiffs and the Class members were injured in fact and lost money as a result of Defendant's conduct of improperly describing the Products as "NATURALS" and natural, as detailed herein.  Plaintiffs and the Class members paid for Products that were "NATURALS" and natural, but did not receive such Products.

99.     The Products Plaintiffs and the Class members received were worth less than the Products for which they paid.

100.    THEREFORE, Plaintiffs pray for relief as set forth below.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Negligent Misrepresentation under New York Common Law)**
**(By Plaintiffs, on Behalf of Themselves and the Nationwide Class)**

101.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

102.    Plaintiffs bring this cause of action for negligent misrepresentation under New York common law on behalf of themselves and on behalf of the Nationwide Class.

103.    As set forth herein, Defendant represented that the Products are "NATURALS" and natural, when, in fact, the Products contained predominantly unnatural, synthetic ingredients.

104.    At the time Defendant made these representations, Defendant knew or should have known that the representations were false and misleading, or Defendant made the representations with reckless disregard as to whether they were truthful and non-misleading.

105.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Products.

106.    The negligent misrepresentations and omissions that Defendant made, upon which Plaintiffs and the Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class members to purchase the Suave Naturals Products.

107.    Plaintiffs and the Class members would not have purchased the Suave Naturals Products if they had known the true facts about them, *i.e.*, specifically, that the Products were not "NATURALS" or natural because they overwhelmingly contained synthetic ingredients.

108.    The negligent actions of Defendant caused damage to Plaintiffs and the Class members, who seek damages and other legal and equitable relief as a result.

109.    THEREFORE, Plaintiffs pray for relief as set forth below.

### FIFTH CAUSE OF ACTION
**(Restitution / Unjust Enrichment under New York Common Law)**
**(By Plaintiffs, on Behalf of Themselves and the Nationwide Class)**
**(In the Alternative)**

110.    Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

111.    Plaintiffs bring this cause of action in the alternative to the other causes of action

set forth herein.

112.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the Nationwide Class, pursuant to New York common law, for restitution of Defendant's ill-gotten gains, which have unjustly enriched Defendant.

113.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiffs and the members of the Nationwide Class through the payment of the purchase price for Defendant's Products, or through the payment of a premium price for Defendant's Products.

114.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs and the members of the Nationwide Class, in light of the fact that the Products that Plaintiffs and the Nationwide Class members purchased were not the "NATURALS" and natural Products that Defendant purported them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and the other members of the Nationwide Class for the monies they paid to Defendant for such Products.

115.    THEREFORE, Plaintiffs pray for relief as set forth below.

### SIXTH CAUSE OF ACTION
**(Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*)**
**(By Plaintiff Latu Fanaika, on Behalf of Herself and the California Sub-Class)**
**(Seeking Monetary and Injunctive Relief)**

116.    Plaintiff Latu Fanaika repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

117.    Ms. Fanaika brings this cause of action pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"), on behalf of herself and on behalf of the California Sub-Class.

118.   Ms. Fanaika and the California Sub-Class members are "consumers," as California Civil Code section 1761(d) defines the term, because they bought the Products for personal, family, or household purposes.

119.   Ms. Fanaika, the members of the California Sub-Class, and Defendant have engaged in "transactions," as California Civil Code section 1761(e) defines the term.

120.   The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and Defendant undertook the conduct in transactions intended to result in, and which did result in, the sale of goods to consumers.

121.   As alleged more fully above, Defendant has violated the CLRA by falsely and misleadingly representing to Ms. Fanaika and the California Sub-Class members that the Products are "NATURALS" and are natural, when, in fact, the Products are comprised mostly of unnatural, synthetic ingredients.

122.   As a result of engaging in such conduct, Defendant has violated California Civil Code section 1770(a)(5), (a)(7), and (a)(9).

123.   Pursuant to California Civil Code section 1780(a)(2) and (a)(5), Ms. Fanaika seeks an Order of this Court that includes, but is not limited to, an Order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

124.   Ms. Fanaika and the California Sub-Class members may be irreparably harmed and/or denied an effective and complete remedy if such an Order is not granted.

125.   The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Ms. Fanaika and the members of the California Sub-Class.

126.   **CLRA SECTION 1782 NOTICE.**   On October 25, 2013, Ms. Fanaika sent, on behalf of herself and the Class members, a CLRA demand letter to Unilever United States, Inc., and Unilever PLC that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Unilever correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein.   The letter also stated that if Unilever refused to do so, Ms. Fanaika would file a Complaint seeking damages in accordance with the CLRA.   Unilever has failed to comply with the letter.   Accordingly, pursuant to California Civil Code section 1780(a)(3), Ms. Fanaika, on behalf of herself and all members of the California Sub-Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's wrongful acts and practices.

127.   THEREFORE, Ms. Fanaika prays for relief as set forth below.

### SEVENTH CAUSE OF ACTION
**(Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*)**
**(By Plaintiff Latu Fanaika, on Behalf of Herself and the California Sub-Class)**

128.   Plaintiff Latu Fanaika repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

129.   Ms. Fanaika brings this cause of action pursuant to California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL"), on behalf of herself and on behalf of the California Sub-Class.

130.   The acts of Defendant described above, and each of them, constitute unlawful business acts and practices.

131.   At all material times, Defendant engaged in a scheme of offering the Products for sale to Ms. Fanaika and the California Sub-Class members by way of, *inter alia*, commercial marketing and advertising, Product packaging and labeling, and other promotional materials.   As

described more fully herein, Defendant's portrayal of the Products as "NATURALS" and as natural are misleading and deceptive because the Products are comprised of mostly unnatural, synthetic ingredients.  Defendant made said advertisements and inducements within the State of California, and said advertisements and inducements come within the definition of advertising contained in the FAL, in that such promotional materials were intended as inducements to purchase Defendant's Products and are statements disseminated by Defendant to Ms. Fanaika and the other California Sub-Class members that were intended to reach Ms. Fanaika and the California Sub-Class members.  Defendant knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

132.    In furtherance of said plan and scheme, Defendant has prepared and distributed within the State of California—via commercial marketing and advertising, Product packaging and labeling, and other promotional materials—statements that misleadingly and deceptively represent the Products as "NATURALS" in the product name, in addition to scenic images and deceptive statements regarding the natural-sounding ingredients of the Products and deceptive natural-sounding Product variety names.  Consumers, including Ms. Fanaika and the California Sub-Class members, necessarily and reasonably relied on these materials concerning Defendant's Products. Consumers, including Ms. Fanaika and the California Sub-Class members, were among the intended targets of such representations.

133.    The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Ms. Fanaika and the other members of the California Sub-Class, were and are likely to deceive reasonable consumers, including Ms. Fanaika and the other members of the California Sub-Class, by obfuscating the nature, quality, and/or ingredients of the Products, in violation of the "misleading" prong of the

FAL.

134.    The business practices alleged above are unlawful under the CLRA, which forbids misleading and deceptive advertising.

135.    Ms. Fanaika and the members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of the FAL.

136.    As a result, Defendant has been unjustly enriched at the expense of Ms. Fanaika and the other members of the California Sub-Class.  Ms. Fanaika and the California Sub-Class members, pursuant to California Business and Professions Code section 17535, seek an Order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for their Products as a result of the wrongful conduct of Defendant.

137.    THEREFORE, Ms. Fanaika prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**(Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*)**
**(By Plaintiff Latu Fanaika, on Behalf of Herself and the California Sub-Class)**

138.    Plaintiff Latu Fanaika repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

139.    Ms. Fanaika brings this cause of action pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL"), on behalf of herself and on behalf of the California Sub-Class.

140.    By committing the acts and practices alleged herein, Defendant has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

141.    Defendant has violated the UCL's proscription against engaging in unlawful

conduct as a result of its violations of (i) the CLRA, as alleged above, and (ii) the FAL, as alleged above.

142.     In addition, Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of California's Sherman Law, Cal. Health & Safety Code § 109875 *et seq.*, which forbids (i) misbranding of any cosmetic, *id.* at § 111770, and (ii) manufacturing, selling, delivering, holding, or offering for sale any cosmetic that is misbranded or delivering or proffering such for delivery, *id.* at § 111775.

143.     In relevant part, the Sherman Law declares that a cosmetic is misbranded if its container is misleading in any particular way and further provides that it is unlawful for any person to misbrand any cosmetic.  Cal. Health & Safety Code §§ 111755, 111770.

144.     The Sherman Law defines a "person" as "any individual, firm, partnership, trust, corporation, limited liability company, company, estate, public or private institution, association, organization, group, city, county, city and county, political subdivision of this state, other governmental agency within the state, and any representative, agent, or agency of any of the foregoing."  Cal. Health & Safety Code § 109995.  Conopco, Inc., is a corporation and, consequently, is a "person" within the meaning of the Sherman Law.

145.     As more fully described herein, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive a reasonable consumer.  Indeed, Ms. Fanaika and the California Sub-Class members were deceived regarding the characteristics of Defendant's Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresents and/or omits the true nature, quality, and/or ingredients of the Products. Defendant's portrayal of the Products as "NATURALS" and as natural are misleading and deceptive because the Products consist overwhelmingly of unnatural, synthetic ingredients.

146.   Ms. Fanaika and the members of the California Sub-Class who purchased the Products suffered a substantial injury by virtue of buying a Product they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling.

147.   There is no benefit to consumers or competition from deceptively marketing and labeling Products that contain synthetic ingredients as "NATURALS" and as natural.  Indeed, the harm to consumers and competition is substantial.

148.   Ms. Fanaika and the members of the California Sub-Class who purchased the Products had no way of reasonably knowing the Products they purchased were not as marketed, advertised, packaged, and labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

149.   The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Ms. Fanaika and the other members of the California Sub-Class.

150.   Defendant's violations of the UCL and the FAL continue to this day.

151.   Pursuant to California Business and Professions Code section 17203, Ms. Fanaika and the members of the California Sub-Class seek an Order of this Court that includes, but is not limited to, an Order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for Defendant's Products as a result of the wrongful conduct of Defendant.

152.     THEREFORE, Ms. Fanaika prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment on behalf of themselves and the proposed Class providing such relief as follows:

A.     Certification of the Classes proposed herein under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3); appointment of Plaintiffs as representatives of the Classes as set forth herein; and appointment of their undersigned counsel as counsel for the Classes;

B.     A declaration that Defendant is financially responsible for notifying members of the Classes of the pendency of this suit;

C.     Compensatory damages, punitive damages, and restitution to the California Sub-Class, pursuant to California Civil Code section 1780(a)(3);

D.     Restitution to the California Sub-Class pursuant to California Business and Professions Code sections 17203 and 17535;

E.     Disgorgement to the California Sub-Class pursuant to California Business and Professions Code sections 17203 and 17535;

F.     Injunctive relief on behalf of the California Sub-Class, pursuant to California Business and Professions Code sections 17203 and 17535 and pursuant to California Civil Code section 1780, enjoining Defendant's unlawful and deceptive acts;

G.     Monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

H.     Statutory damages in the maximum amount provided by law;

I.     Punitive damages in accordance with proof and in an amount consistent with

applicable precedent;

   J.  A permanent injunction prohibiting Defendant's false and misleading conduct set forth herein;

   K.  An award to Plaintiffs and the Class members of the reasonable costs and expenses of the lawsuit, including their attorneys' fees; and

   L.  Such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

  Plaintiffs hereby demands a trial by jury for all claims so triable.

Date: August 29, 2014      Respectfully submitted,

             _____

             George V. Granade II
             *ggranade@reeserichman.com*
             Kim E. Richman
             *krichman@reeserichman.com*
             Michael R. Reese
             *mreese@reeserichman.com*
             **REESE RICHMAN LLP**
             875 Avenue of the Americas, 18th Floor
             New York, New York 10001
             Telephone: (212) 643-0500
             Facsimile: (212) 253-4272

             Todd S. Garber
             *tgarber@fbfglaw.com*
             D. Greg Blankinship
             *gblankinship@fbfglaw.com*
             **FINKELSTEIN, BLANKINSHIP,**
             **FREI-PEARSON & GARBER, LLP**
             1311 Mamaroneck Avenue, Suite 220
             White Plains, New York 10605
             Telephone: (914) 298-3281
             Facsimile: (914) 824-1561

             *Counsel for Plaintiffs and the Proposed Class*