UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

LUCIANNE PAULINO and LATU FANAIKA, on behalf of themselves and all others similarly situated,

                        Plaintiffs,

- versus -

CONOPCO, INC., D/B/A UNILEVER,

                        Defendant.

MEMORANDUM AND ORDER  
14-CV-5145 (JG)(RML)

A P P E A R A N C E S:

    FINKELSTEIN, BLANKINSHIP,  
    FREI-PEARSON & GARBER, LLP  
        1311 Mamaroneck Avenue, Suite 220  
        White Plains, NY 10605  
    By:   D. Greg Blankinship  
        Todd Seth Garber  
        *Attorneys for Plaintiffs*

    REESE RICHMAN LLP  
        875 Avenue of the Americas  
        New York, NY 10169  
    By:   Kim Richman  
        Michael Robert Reese  
        George Volney Granade, II  
        *Attorneys for Plaintiffs*

    KIRKLAND & ELLIS  
        601 Lexington Avenue  
        New York, NY 10022  
    By:   Jay P. Lefkowitz  
        Ross Lee Weiner  
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

Lucianne Paulino and Latu Fanaika have brought this putative class action against defendant Conopco, Inc., doing business as Unilever, Inc. ("Conopco"), alleging that it misled consumers about the ingredients of its shampoos, conditioners, body washes, body lotions, and other personal care products sold under the "Suave NATURALS" brand name (the "Products"). Specifically, the plaintiffs allege that the packaging for these products contains the representation "NATURALS" when in fact they contain unnatural and synthetic ingredients.

Conopco now moves to dismiss. For the reasons stated below, the motion is granted in part and denied in part.

## BACKGROUND

Since the plaintiffs have withdrawn two causes of action,[1] the complaint now charges six causes of action against Conopco: breach of warranty and unjust enrichment under New York law; violation of New York General Business Law ("GBL") § 349; violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

## DISCUSSION

A.   *The Legal Standards*

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012). In making this

---

[1] Though the complaint contains allegations of fraud and negligent misrepresentation, *i.e.*, Counts Three and Four, plaintiffs have abandoned those claims. *See* Pl. Opp. at 1, n.2.

2

determination, a court should assume the truth of all well-pleaded allegations in the complaint "and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (internal citations omitted)). In deciding a motion to dismiss, a court considers "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken . . . ." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).

  B. *Breach of Warranty and Unjust Enrichment*

    1. *Notice Under the New York UCC*

  Conopco contends that the plaintiffs' express warranty claim fails because they do not allege they provided the requisite notice. New York law requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2–607(3)(a). The only pre-litigation notice that the plaintiffs allege is an October 25, 2013 demand letter that Fanaika sent to Conopco on behalf of herself and the "Class members." Compl. ¶ 126.[2] The plaintiffs have attached a copy of the October 25, 2013 letter to their opposition brief. *See* Richman Decl., Ex. 2. Since this letter was incorporated by reference in the Complaint at paragraph 126, I may properly consider it in ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). The letter was submitted on behalf of "Latu Fanaika, and a putative class of all persons in the United States who purchased Defendant's 'Suave NATURALS' brand products . . . during the applicable

---

[2] Conopco's counsel responded to the draft complaint by letter dated November 20, 2013. *See* Declaration of Kim E. Richman ("Richman Decl.") ¶ 10, ECF No. 15-1.

3

limitations period." *See* Richman Decl., Ex. 2 at 1. Attached to the letter was a draft complaint containing a cause of action for breach of express warranty on behalf of the nationwide class. *See id.* at 21-22.

Given the liberal requirements regarding the content of the notice under the New York Uniform Commercial Code, I conclude that this letter and draft complaint provided the requisite notice to Conopco that a nationwide class of plaintiffs objected to the Products' labeling. *See Cliffstar Corp. v. Elmar Indus., Inc.*, 678 N.Y.S.2d 222, 223 (4th Dep't 1998) ("[T]he notice given by plaintiff had only to alert defendant that the transaction was troublesome and did not need to include a claim for damages or threat of future litigation.") (internal citations and quotations omitted); N.Y. U.C.C. § 2–607, cmt. 4 ("The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.").

Even if the notice were adequate, Conopco contends it was too late. The complaint alleges that Paulino and Fanaika began purchasing the Products around five and three years, respectively, before they provided notice that Conopco had breached its warranty. Compl. ¶¶ 25, 33.[3] With respect to the timing of the actual purchases by the named plaintiffs, the complaint simply states:

> - During the past six (6) years, Ms. Paulino purchased several varieties of the Products at retail prices from various Brooklyn supermarkets for the personal use of herself and her family . . . .

*Id.* ¶ 25.

---

[3] The complaint was filed on August 29, 2014, and Paulino and Fanaika allege they began purchasing the Products six and four years prior to that date, respectively. Since notice of a nationwide class was provided in October 2013, that means Paulino and Fanaika started buying the Products roughly five and three years before giving notice.

- During the past four (4) years, Ms. Fanaika purchased several varieties of the Products at retail prices from various Oakland supermarkets for her personal use . . . .

Compl. ¶ 33.

Whether a timeframe is reasonable "depends on the nature, purpose, and circumstances of the action." N.Y. U.C.C. Law § 1–205(a). "[T]he rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." N.Y. U.C.C. Law § 2–607, cmt. 4. Although courts have found some delays unreasonable as a matter of law, *see, e.g.*, *Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260-61 (E.D.N.Y. 2014), the sufficiency and timeliness of a delay is normally a question of fact for the jury. *Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136 (N.Y. Sup. Ct. Nassau Co. 1980), *aff'd*, 441 N.Y.S.2d 410 (2d Dep't 1981); *Hubbard v. Gen. Motors Corp.*, No. 95-CV-4362, 1996 WL 274018, at *4 (S.D.N.Y. May 22, 1996). This case is no exception. Though Conopco's position may have merit, at this stage, I decline to find as a matter of law that plaintiffs waited for an unreasonable amount of time before providing notice to Conopco.

        2.     *The Express Warranty*

Under Section 2–313(1) of the New York Uniform Commercial Code, a seller creates an express warranty by making "[a]ny affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2–313(1)(a). Moreover, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2–313(1)(b); *see also Scientific Components Corp. v. Sirenza Microdevices, Inc.*, 399 F. App'x 637, 639 (2d Cir. 2010). Generalized statements by a defendant, however, do not support an express warranty claim if they are "such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely." *Hubbard*, 1996 WL

5

274018, at *6 (internal quotations omitted). What a reasonable consumer's interpretation of a seller's claim might be is generally an issue of fact which is not appropriate for decision on a motion to dismiss. *See Ault v. J.M. Smucker Co.*, No. 13-CV-3409 (PAC), 2014 WL 1998235, at *6 (S.D.N.Y. May 15, 2014).

There is authority within this Circuit for the proposition that labeling a product "Naturals" can constitute an actionable warranty under New York law. *See, e.g.*, *Ault*, 2014 WL 1998235, at *6 ("Defendant's labeling of Crisco Oil as 'All Natural' is an actionable warranty."); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482-83 (S.D.N.Y. 2014) (allowing breach of warranty claim based on "Active Naturals" labeling of personal care products); *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM)(RLM), 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013) ("All Natural" label on potato chip packaging constituted express warranty under New York law); *see also Parker v. J.M. Smucker Co.*, No. C 13-0690 (SC), 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (applying California law, holding that "'All Natural' is an affirmative claim about a product's qualities, and it does not amount to mere puffery because it is not outrageous and generalized").

At the present stage of the litigation, I cannot say that a reasonable consumer could not interpret "Naturals" to be a factual claim about the Suave NATURALS line of products.

        3.    *Unjust Enrichment*

To state a claim for unjust enrichment under New York law, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience require the defendant to make restitution. *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. 2013); *accord Corsello*

6

*v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the defendant has obtained a benefit which in equity and good conscience should be paid to the plaintiff." (internal quotations omitted)).

The New York Court of Appeals has held that an unjust enrichment claim is available "*only* in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello*, 18 N.Y.3d at 790 (emphasis added). It is not a "catchall cause of action to be used when others fail," and is typically limited to instances where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled." *Id.* An unjust enrichment claim that merely "duplicates, or replaces, a conventional contract or tort claim" is insufficient. *Id.* at 790-91.

Several post-*Corsello* decisions involving the deceptive labeling of consumer goods have dismissed unjust enrichment claims as duplicative or otherwise unavailable at the motion to dismiss stage. *See, e.g.*, *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) (dismissing unjust enrichment claim stemming from defendants' misrepresentation that its milk products were fat free); *Goldemberg*, 8 F. Supp. 3d at 483-84 (dismissing an unjust enrichment claim involving allegations that defendant misled consumers that its skin-care products, whose packaging prominently displayed the phrase "Active Naturals," were made exclusively from natural ingredients); *see also Rose v. Rahfco Mgmt. Grp., LLC*, No. 13-CV-5804 (VB), 2014 WL 7389900, at *7 (S.D.N.Y. Dec. 15, 2014) (limiting unjust enrichment to "gratuitous donees" of illicitly gained funds); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311 (JSR), 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (holding that plaintiff

7

adequately pleaded claims under New York law for violation of GBL § 349, negligent misrepresentation, and fraud, but dismissing unjust enrichment claim as duplicative).

I can conceive of no circumstance in which plaintiffs' breach of warranty claim would fail yet they still would be entitled, in equity and good conscience, to restitution from Conopco. Accordingly, the unjust enrichment claim is dismissed.

    D.    *Plaintiff Paulino's Claim under New York General Business Law § 349*

        1.    *Legal Standard*

Section 349 of the New York GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a); *Goldemberg*, 8 F. Supp. 3d. at 478. "The statute seeks to secure an honest market place where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) (internal quotations omitted). To state a claim under GBL § 349, a plaintiff must allege (1) that the defendant was engaged in a "consumer-oriented" business practice or act; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). A § 349 action is not subject to the pleading-with-particularity requirements of Rule 9(b) but need only meet the notice-pleading requirements of Rule 8(a). *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). Courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading to "a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995).

    2.  *Discussion*

    Applying this framework to the case at hand, Conopco does not challenge that its selling and marketing of the Products was directed at consumers. With respect to whether Conopco engaged in deceptive business practices causing injury to plaintiffs, the complaint alleges the following:

- Conopco deceptively markets its Products with the label "Naturals" when, in fact, they contain primarily unnatural, synthetic ingredients.

Compl. ¶¶ 1-20, 42-57.

- Conopco labels its Products as "Naturals," conveying to reasonable consumers that the Products are, in fact, natural, when Conopco knows that a "natural" claim regarding cosmetics is a purchase motivator for consumers.

*Id.*

- Plaintiffs purchased the Products after viewing misleading statements on the Products' labels that led them to believe the Products they were purchasing were natural, when they were not.

*Id.* ¶¶ 24-39, 53-59.

- Plaintiffs purchased, purchased more of, or paid more for the Products than they would have otherwise paid because of Conopco's misrepresentations.

*Id.* ¶¶ 16-20, 24-39, 53-59, 85-86.[4]

    In addition to representations on the front labels that the Products were "Naturals," the plaintiffs point to other aspects of the labeling that would further lead a reasonable consumer to believe she was purchasing natural products. For instance, there are statements that the Products are "infused with" various natural-sounding ingredients, such as

---

[4]  Plaintiffs also allege that damages would exceed $50 as required by GBL § 349(h). Compl. ¶ 87.

"mineral-rich algae extract."[5] Compl. ¶ 2. These statements are accompanied by images of natural scenery or objects such as blooming cherry blossoms, lush rainforest undergrowth, or a cracked coconut. *Id.* And the Products' names themselves reflect natural environments or objects, including for example, "Rainforest Fresh" and "Waterfall Mist." *Id.*

Conopco contends that several features of its Products would prevent a reasonable consumer from concluding that they were "natural." First, it notes that Suave NATURALS is a value brand. *See* Competitive Impact Statement, *United States v. Unilever*, No. 11-CV-00858, 2011 WL 2444822 (D.D.C. May 6, 2011). Even if true, I cannot rule as a matter of law at this stage that the low price of a product renders implausible the allegation that consumers are paying an unwarranted premium. Conopco has presented no persuasive legal authority for such a proposition.

Nor does the FDA-mandated list of ingredients on the back of the packaging extinguish the possibility of deceptive advertising. *See Koenig*, 995 F. Supp. 2d at 289-90 (disclosure of fat content on packaging does not preclude a warranty based on the representation that milk product was fat free); *Goldemberg*, 8 F. Supp. 3d at 479-80 (reasonable consumer could be misled by "Active Naturals" representation despite disclosure of synthetic ingredients on label). As the Ninth Circuit stated in *Williams v. Gerber Prods. Co.*:

> Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box . . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed

---

[5] Conopco rightfully points out that there is no allegation that the Products do not, in fact, contain the ingredient with which they have been "infused." *See* Def. Br. at 16-17. Still, that language, even if true, could inform a reasonable consumer's interpretation of the representation "Naturals."

10

>information about the product that confirms other representations on the packaging.

552 F.3d 934, 939-40 (9th Cir. 2008) (the mere fact that an FDA-mandated nutritional panel provided accurate nutritional information on a product did not bar claims that reasonable consumers could be misled); *see also Ackerman v. Coca-Cola Co.*, No. 09-CV-0395 (JG)(RML), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010).

At this stage, the difference between the plural "Naturals" and the descriptive "Natural" is too elusive to require dismissal. That the label makes no explicit claim of being "All Natural," "100% natural," or "free from synthetics" is beside the point. A reasonable juror could reach the conclusion that the label "Naturals" means that the product is at least mostly comprised of natural ingredients. *See Goldemberg*, 8 F. Supp. 3d at 479-80 ("[T]he Court cannot hold as a matter of law that the product labels [Active Naturals] are not misleading to a reasonable consumer."); *Morales v. Unilever U.S., Inc.*, No. 13-CV-2213 (WBS)(EFB), 2014 WL 1389613, at *7 (E.D. Cal. Apr. 9, 2014) ("The court therefore cannot conclude at this stage of the litigation that a reasonable consumer would not be misled by the term 'natural' or 'Naturals.'"); *Jou v. Kimberly-Clark Corp.*, No. C-13-03075 (JSC), 2013 WL 6491158, at *6 (N.D. Cal. Dec. 10, 2013) ("Whether one labels a product 'natural' or 'all natural,' the same plausible inference can be drawn — that the product is natural, meaning it is not made with any non-natural ingredients. While the use of 'all' in 'all natural' may make the inference *even more* plausible than the inference arising from the use of just 'natural,' the use of 'natural' still provides the plausible inference required to defeat a Rule 12(b)(6) motion." (emphasis in original)).

Other label features that purportedly signal the presence of unnatural ingredients, such as the transparent bottles and the vibrant colors of the Products, though possibly relevant,

11

are not determinative as a matter of law. Reasonable consumers could very well expect that natural products might have natural color additives and whether Conopco's colors are not achievable in nature and whether an average consumer would know whether a vibrant color can be created with natural ingredients are questions of fact for the jury.

Thus, I conclude that plaintiffs have sufficiently alleged that Conopco's "Naturals" representations on the Products' labeling misled them into believing that Conopco's Products were natural when, in fact, the Products were filled with unnatural, synthetic ingredients. That plaintiffs paid a premium as a result of this alleged misrepresentation likewise has been adequately pleaded.

    E.    *California State Law Claims*

        1.    *Applicability of Federal Rule of Civil Procedure 9(b)*

Though claims under CLRA, UCL, and FAL do not include fraud as an element, they are nonetheless subject to the heightened pleading requirements of Rule 9(b) if they are premised on allegations of fraud. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (recognizing when "fraud is not a necessary element of a [particular] claim," Rule 9(b) will still apply if the plaintiff has "allege[d] a unified course of fraudulent conduct and rel[ied] entirely on that course of conduct as the basis of [the] claim"); *In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 54 (E.D.N.Y. 2014) (applying Rule 9(b) standard to claims under California's UCL, FAL, and CLRA); *see also Ackerman*, 2010 WL 2925955, at *17-18. Conopco argues that the heightened pleading standard applies to plaintiffs' claims under the California consumer protection statutes. I conclude that the plaintiffs have met the heightened Rule 9(b) pleading

standard for each of their California state law claims, and thus, need not decide whether the complaint sounds in fraud.

"To comport with Rule 9(b), a plaintiff must not only give the who, what, and when with regard to an alleged false or misleading statement, but also must 'give particulars as to the respect in which plaintiff contends the statements were fraudulent.'" *Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52 (E.D.N.Y. 1998) (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). "The particularity requirement of Rule 9(b) is designed to further three goals: (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas*, 886 F.2d at 11.

### 2. *Unlawful Competition and False Advertising Law*

California's FAL prohibits the dissemination in any advertising medium of any "statement" concerning "real or personal property" offered for sale, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. An FAL-based claim may concern "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Ackerman*, 2010 WL 2925955, at *18 (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). To plead such a claim, "a plaintiff must allege: (1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading." *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009) (*citing People v. Lynam*, 253 Cal. App. 2d 959, 965 (1967)).

13

Here, plaintiffs allege that Conopco misled consumers that its Products were "Naturals." In reality, they were not "Naturals" because they contained numerous unnatural, synthetic ingredients. *See* Compl. ¶¶ 1, 4-7, 18. Conopco did this by engaging in a "widespread, uniform marketing campaign using the Product packaging to mislead consumers about the nature, quality and/or ingredients in Suave Naturals." *Id.* ¶ 2. To further illustrate their arguments, plaintiffs have attached to the complaint an exhibit of color images showing many of the particular Products and labels at issue, and identified and explained how several of the representations were misleading. *See id.* ¶ 2, Ex. 1.

Both Paulino and Fanaika indicated the time-period over which they purchased the Products, where they purchased the Products, and which particular products they bought. Compl. ¶¶ 25, 33. They allege that the packaging of the particular products they purchased contained the misleading representations at issue – that the products were "NATURALS," "infused with" various natural-sounding ingredients, contained imagery of natural scenes and objects, and had natural-sounding names. Compl. ¶¶ 27, 34.

Despite these allegations, Conopco argues that the complaint fails to state a claim under the California statues for two independent reasons: (1) no reasonable consumer would be misled by the word "Naturals" in the context of the Products' packaging, and (2) the plaintiffs failed to adequately plead reliance.

    a.    *Reasonable Consumer Standard*

Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test, which requires plaintiffs to "show that members of the public are likely to be deceived." *Williams*, 552 F.3d at 938; *see also Harris v. Las Vegas Sands L.L.C.*, No. 12-CV-10858 DMG (FFMx), 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16, 2013) ("Claims under

14

CLRA, FAL and UCL are governed by the 'reasonable consumer' test"). For the reasons discussed above, plaintiffs have adequately pled that the statement that the Products are "Naturals" could mislead reasonable consumers.

    b.  *Reliance*

As to the second point, Conopco asserts that plaintiffs have failed to meet the reliance requirements of the UCL, FAL, and CLRA. *See Ackerman*, 2010 WL 2925955, at *19; *Brazil v. Dole Food Co., Inc.*, No. 12-CV-01831 (LHK), 2013 WL 5312418, at *8 (N.D. Cal. Sept. 23, 2013) (citing cases). Contrary to Conopco's assertions, plaintiffs have adequately pled that they relied on the mislabeling when they purchased the Products. For example, the complaint states:

- In deciding to purchase, and in purchasing, the Products, Ms. Paulino *relied upon* the representation that Suave Naturals were, in fact, "NATURALS."

Compl. ¶ 27 (emphasis added).

- Had Ms. Paulino known at the time of purchase that the Products were not, in fact, "NATURALS" or natural, but instead contained predominantly unnatural, synthetic ingredients, she would not have purchased the Products. Ms. Paulino purchased, purchased more of, or paid more for, the Products than she would have had she known the truth that the Products were not "NATURALS" or natural.

*Id.* ¶ 28.

- In deciding to purchase, and in purchasing, the Products, Ms. Fanaika *relied upon* the representation that Suave Naturals were, in fact, "NATURALS."

*Id.* ¶ 35 (emphasis added).

- Had Ms. Fanaika known at the time of purchase that the Products were not, in fact, "NATURALS" or natural, but instead contained unnatural, synthetic ingredients, she would not have purchased the Products. Ms. Fanaika purchased, purchased more of, or paid more

15

> for, the Products than she would have had she known the truth that the Products were not "NATURALS" or natural.

*Id.* ¶ 36.

> - Plaintiff and the other members of the Class *reasonably relied to their detriment* on Defendant's false and misleading representations and omissions. Defendant's misleading affirmative statements that the Products are "NATURALS," as well as its other representations/imagery indicating the Products are natural, obscured the material facts that Defendant failed to disclose about the unnaturalness of its Products, including in particular the fact that the Products contain synthetic ingredients.

*Id.* ¶ 51 (emphasis added).

> - Consumers, including Ms. Fanaika and the California Sub-Class members, necessarily and *reasonably relied on these materials* concerning Defendant's Products.

*Id.* ¶ 132 (emphasis added).

In light of the above, I conclude that plaintiffs have sufficiently stated a claim under the California FAL. By successfully pleading the FAL claim, plaintiffs have also made out a claim under California's UCL. *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983) ("[a]ny violation of the false advertising law . . . necessarily violates the unfair competition law"), *superseded by statute on another ground, as stated in Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006); *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002) (recognizing that UCL defines unfair competition to include any act prohibited by California's FAL); *accord Williams*, 552 F.3d at 938; *Parino v. BidRack, Inc.*, 838 F. Supp. 2d 900, 905 (N.D. Cal. 2011); *Ackerman*, 2010 WL 2925955, at *18 ("[V]iolations of California's False Advertising Law constitute 'unlawful' conduct for the purposes of the UCL.").[6]

---

[6] Plaintiffs have also adequately pled injury under the California statutes. A plaintiff who pays a price premium due to a defendant's misrepresentation suffers sufficient injury to state a claim under the UCL, FAL,

16

Accordingly, the allegations in the complaint plausibly state a violation of California's FAL, and in turn, California's UCL.

3. *The California's Consumers Legal Remedies Act*

California's CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." *See* Cal. Civ. Code § 1770(a). Practices expressly prohibited by the CLRA include, *inter alia*, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have," *id.* § 1770(a)(5), "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," *id.* § 1770(a)(7), and "[a]dvertising goods or services with intent not to sell them as advertised," *id.* § 1770(a)(9). Section 1760 makes clear that the CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.* § 1760.

For the reasons stated above with respect to the UCL and FAL claims, I conclude that plaintiffs have adequately pleaded a CLRA claim under the heightened pleading standard of Rule 9(b). *Cf. Meserole v. Sony Corp. of Am., Inc.*, No. 08-CV-8987 (RPP), 2009 WL 1403933, at *5 (S.D.N.Y. May 19, 2009) (dismissing CLRA claim for failing to plead with particularity

---

and CLRA. *See, e.g.*, *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 (RMW), 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) (complaint adequately alleged injury under UCL and FAL through claims that plaintiff bought the product at a premium price in reliance on misleading suggestion that it was environmentally friendly); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 (JSW), 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) *aff'd*, 475 F. App'x 113 (9th Cir. 2012) ("Accepting as true the allegations that Defendant charged a premium price based on alleged misrepresentations, Plaintiff satisfies the injury in fact requirement for standing to pursue claims . . . under the UCL, FAL and CLRA."); *see also Chavez v. Blue Sky Natural Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009) (injury sufficiently pled where plaintiff purchased product because of misrepresentation that it was from New Mexico).

17

where plaintiffs did not allege "when or by whom [the] alleged misrepresentations were made, whether they were relied upon by Plaintiffs in determining whether to purchase the Televisions, [] the basis for Plaintiffs' claim that Defendants knew that those statements were false and misleading, [or] how any of those statements were untrue or misleading . . . .").

  F. *The Nationwide Class and Damages*

Conopco's request to strike plaintiffs' nationwide class allegations at the motion to dismiss stage is premature; the issues they raise are better addressed on a motion for class certification. *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (denying motion to strike class allegations where "all of the defendants' arguments are indistinguishable from the issues that would be decided in the context of a motion for class certification"); *see also Sharma v. BMW of N. Am., LLC*, No. 13-2274, 2015 WL 82534, *2-3 (N.D. Cal. Jan. 6, 2015) (denying motion to strike class allegations at the pleading stage).

I am likewise unpersuaded by Conopco's claims that plaintiffs fail to plausibly allege damages. At various points, the complaint alleges plaintiffs paid a price premium for the Products as a result of Conopco's misrepresentations. Compl. ¶¶ 16, 28, 36, 54, 84-86, 113. This is sufficient to state a claim under New York's consumer protection statutes, *see, e.g.*, *Goldemberg*, 8 F. Supp. 3d at 481 ("[A] plaintiff may properly allege . . . the price of the product was inflated as a result of [the] defendant's deception.") (collecting cases); *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations."), as well as the California consumer protection statutes. *See Carrea*, 2011 WL 159380, at *2.

18

CONCLUSION

For the reasons above, the defendant's motion to dismiss is granted in part and denied in part. I grant the motion with respect to Counts Three, Four, and Five. The motion to dismiss is denied as to Counts One, Two, Six, Seven, and Eight.

So ordered.

John Gleeson, U.S.D.J.

Dated: August 17, 2015
      Brooklyn, New York